IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID JAMES,

                Plaintiff,                Case No. 3:04 CV 7556

    -vs-

                                               MEMORANDUM OPINION

LUCAS COUNTY JUVENILE
ADMINISTRATIVE JUDGE, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the unopposed motion (no opposition has been filed nor has a request for extension of time for filing been received by the Court) of Defendant Judge James Ray ("Judge Ray") for summary judgment. (Doc. No. 26). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, Defendant's motion is granted.

## **BACKGROUND**

From June, 1993, to July 13, 2004, Plaintiff David James was employed by the Lucas County Juvenile Court ("the Juvenile Court"). Judge Ray, who has been the Administrative Judge for the Juvenile Court since 1988, made the decision to hire Plaintiff in 1993, and, in March, 1994, approved Plaintiff's promotion from Child Study Institute childcare worker to his ultimate position as a restitution crew leader. On July 13, 2004, Judge Ray terminated Plaintiff's employment with the Juvenile Court, due to Plaintiff's record of four similar complaints of inappropriate conduct, made over the course of ten years by females working in his restitution crews. Judge Ray believed that the similarity between the complaints made them credible as a

pattern. He also took into account the fact that no such complaints had been made against any other restitution crew leader, yet Plaintiff had been the subject of four.

Plaintiff's duties as a restitution crew leader required him to drive to various work sites where juveniles owing restitution to crime victims were working, and to monitor their behavior as they performed their work. The first complaint against Plaintiff came in June of 1994, when Joni Davenport, a girl on one of his restitution crews, told an administrator that Plaintiff had asked her inappropriate questions about her sexual activities, such as whether she had sex, and whether she "like[d] it from the back." (Doc. No. 26-2, p. 3). Davenport reported that Plaintiff also asked her whether she had a sister, asked for her sister's phone number, and, when she refused to give it, replied "oh, you just want me for yourself." *Id*. During the same week that Davenport made her complaint, two girls who had worked with Plaintiff at a camp for juveniles stated that he also asked them similarly inappropriate questions. In response to the complaint, Lucas County Children's Services conducted an investigation, which concluded that while sexual abuse as defined by the Ohio Revised Code was unsubstantiated, Plaintiff had discussed inappropriate sexual topics with the girls. James was reprimanded, but was not fired.

The second complaint came about a year later, when another girl on one of Plaintiff's restitution crews, Angelique Arthur, complained that Plaintiff had asked her to show him her breasts, asked whether she was wearing a bra and whether she went out with black boys, and repeatedly stared at her chest. When she asked her to leave him alone, he replied, "I don't want any sexual harassment charges." *Id* at 5. After reviewing the results of the investigation into the complaint, Judge Ray suspended Plaintiff for three days and warned him that similar incidents would lead to more discipline, possibly including discharge.

2

The third complaint was lodged in June, 2003, by Stephanie Dobbs, a member of one of Plaintiff's restitution crews, who claimed Plaintiff made sexual comments to her. Plaintiff denied the allegations, and because the complainant could not provide specific examples, Plaintiff was counseled, but was not disciplined.

The fourth incident, which ultimately led to Plaintiff's termination, was reported on May 7, 2004, by a family friend of Defendant Tiffany Robaszkiewcz, a girl who claimed Plaintiff had made sexually inappropriate comments to her while she worked on one of his restitution crews. In response to the complaint, the Assistant Administrator of Probation Services conducted a four-week investigation. Three boys who were on the restitution crew corroborated parts of Robaszkiewcz's version of events.

The investigation found that Plaintiff asked Robaszkiewcz if she had a sister and gave her a pink piece of paper with his cell phone number, which one of the boys on the crew found ripped up in the pocket of a jacket he had lent to Robaszkiewcz. Plaintiff described to all of the members of the crew some graphic sexual scenes he had seen on television. At the work site, he separated Robaszkiewcz from the boys on the crew and worked with her, spreading mulch. After awhile, Robaszkiewcz went to the boys and reported that Plaintiff had told her more about the television show and asked to give her a hug "from behind." She said she was scared of Plaintiff, and one of the boys lent her his jacket so she could cover her body more. One boy on the crew stated that Plaintiff made habit of making comments about girls he noticed on the street. Another stated that the boys joked among themselves about Plaintiff being a "sex offender."

Plaintiff was suspended with pay during the internal investigation and a parallel inquiry by the Children's Services Board. Children's Services found no sexual abuse, but the internal

3

investigation found Plaintiff had failed to comply with the Juvenile Court's standards of conduct and ethical protocols. Due to the record of four similar incidents over ten years, Judge Ray made the decision to terminate Plaintiff.

On September 9, 2004, Plaintiff sued both Judge Ray and Tiffany Robaszkiewcz. Plaintiff's complaint is not well-organized, but the Court discerns allegations that: Judge Ray discriminated against Plaintiff on the basis of race, presumably in violation of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.02, and in violation of Ohio public policy; Judge Ray violated Plaintiff's due process rights; promissory estoppel precluded Judge Ray from terminating Plaintiff, based on Plaintiff's reliance on the results of the Children's Services investigation, which found no sexual abuse; and Tiffany Robaszkiewcz slandered and libeled Plaintiff. Judge Ray has moved for summary judgment. Though the case has been pending for over a year, there is no return of service in the record showing that Plaintiff has served Tiffany Robaszkiewcz with the complaint.

## DISCUSSION

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may

meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

"The Federal Rules identify the penalty for the lack of . . . a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. This means that although the court must carefully review the evidence submitted by the movant, the trial court is not obligated to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Levine v. Syms Corp.*, 982 F. Supp. 492, 495 (N.D. Ohio 1997) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). When a motion for summary judgment is unopposed, "in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence . . . in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). Then, "[i]f such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and 'judgment [] shall be rendered forthwith.'" *Id* (quoting Fed. R. Civ. P. 56©)).

*B. Race Discrimination*

Plaintiff has claimed race discrimination in violation of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.02, both of which prohibit any employer from discriminating against an

employee because of race and other discriminatory reasons. Because federal case law governing Title VII actions is generally applicable to cases involving violations of § 4112.02, the analysis here is the same for both causes of action.

It is necessary for a plaintiff in an race discrimination case such as this to show that he was 1) a member of a protected class; 2) discharged; 3) qualified for the position; *and* 4) either replaced by a person outside the protected class or treated less fairly than a similarly situated non-protected person. *See Johnson v. University of Cincinnati* 215, F.3d 561, 572 (6th Cir. 2000); *Young v. Sabbatine*, 200 U. S. App. Lexis 33891 (6th Cir.). The *Young* case has been cited by Defendant and clearly is strikingly similar to the facts before this Court. In the case at bar, Plaintiff does not deny that the allegations of inappropriate conduct were brought to the Juvenile Court's attention on four separate occasions and that such court has a duty to ensure that those who work with and around juveniles treat them appropriately under the law and rules governing conduct of employees. Clearly, Judge Ray adhered to the rules and regulations governing the investigation of this matter and the enforcement of recommendations provided by administrators. The fact is that James simply does not agree with the decision to terminate him. However, of the four prongs as to which James has the burden of showing compliance or lack thereof, clearly he cannot meet the fourth prong of the *Johnson* case since he was replaced by Jerry Wagner, an African-American male. Thus, James has made an effort to attempt to deflect from that by demonstrating that other employees were treated more favorably than he when they engaged in inappropriate work place conduct. A review of the depositions and evidence in this case shows that that effort fails miserably. Quite simply, there is nothing in the undisputed and unopposed

facts before this Court to suggest that Plaintiff's termination was in any way influenced by his race.

*C. Due Process*

As Defendant points out in his memorandum, it is not clear from the complaint whether James alleges a violation of due process because he did not receive a name clearing hearing or whether he is simply seeking such a hearing now as a remedy for other alleged violations.

"When a [public] employee shows that he has been stigmatized by the voluntary public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Chaney v. Village of Potsdam,* 2004 U.S. App. LEXIS 13866 (6th Cir.). A plaintiff must meet each of five elements composing the standard *and* show that his employer denied his request for a name clearing hearing, thus to establish the deprivation of a liberty interest without due process. In this instance, James cannot meet his burden for three basic reasons: 1) no statement about the reason for his termination has been made public by the Defendant; 2) he never asked for a name clearing hearing; and 3) he was provided with a hearing on July 12, 2004, attended by the probation administrator, the assistant probation administrator, the restitution unit manager, the court administrator and a representative of the human resources department. He was given an opportunity to provide information and stated "I have nothing to add and I did not do it."

For the foregoing reasons, James clearly has not been deprived of any liberty interest without due process.

D. *Promissory Estoppel*

As pointed out by Defendant, since at least 1948 the Ohio Supreme Court established the principle that a public employee holds his or her position neither by grant nor contract, nor has that employee any private right of property interest in his or her employment. *State ex rel. Gordon v. Barthalow,* 150 Ohio St. 499, (1948). Thus, Judge Ray could not make employment promises or contracts and there is no evidence that any such promise was made to James by Defendant. Thus, no promissory estoppel can be established by Plaintiff.

*E. Failure to Prosecute*

This case was originally commenced by the filing of a complaint on September 9, 2004, followed by the filing of an amended complaint on October 29, 2004. There is no indication of any service on Defendant, Tiffany Robaszkiewcz, a minor by and through her parent/natural guardian Victoria Thebeau. "[I]t is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999). That entitles said minor defendant to dismissal with prejudice.

## CONCLUSION

Based on the foregoing, Defendant Ray's Motion for Summary Judgment (Doc. No. 26) is granted and this case as to the remaining Defendant, Tiffany Robaszkiewcz, a minor by and through her parent/natural guardian, is dismissed with prejudice.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE